CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 25 2009

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMAL JENKINS HEATH, | ) | |
|    Petitioner, | ) | Civil Action No. 7:09cv00042 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TERRY O'BRIEN, | ) | By: Samuel G. Wilson |
|    Respondent. | ) | United States District Judge |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3) by Jamal Jenkins Heath, a federal inmate proceeding pro se, maintaining that the Bureau of Prisons ("BOP") has erroneously failed to credit the time he served in state custody for murder and malicious wounding against his federal sentences for conspiracy to distribute cocaine base, use of a firearm during a drug trafficking offense, and escape. Despite the fact that each court specifically directed that its sentence run consecutive to all others, Heath maintains that because the United States acquired exclusive and primary custody over him and, nevertheless, transferred him to state authorities after his federal sentence commenced, his time in state custody also counts as time in federal custody. The court finds that because he is serving the correct total time for his consecutive state and federal sentences, he is not entitled to habeas relief. Accordingly, the court dismisses his petition.

I.

On June 30, 1994 the District of Columbia Superior Court sentenced Heath to 30 to 90 months imprisonment for assault with a dangerous weapon. On December 6, 1995, while serving his D.C. sentence, the Circuit Court for the City of Charlottesville, Virginia sentenced Heath to 20 years imprisonment for first-degree murder and five years for malicious wounding. That court ran those sentences concurrent to each other but consecutive to Heath's D.C. sentence. On February 23, 1996, Federal authorities took temporary custody of Heath pursuant to a writ of habeas corpus ad prosequendum, and on October 18, 1996, this court sentenced Heath to 95 months imprisonment for

conspiracy to distribute cocaine base and use of a firearm during a drug trafficking offense. The court expressly ordered that sentence to run consecutively to Heath's D.C. and Virginia sentences. Then, on October 23, 1996 the court returned Heath to D.C. authorities.

On July 25, 1998, Heath escaped from custody while serving his D.C. sentence but was apprehended that same day. Federal authorities charged him in the United States District Court for the Northern District of Ohio with escape, and he pled guilty. On February 9, 1999 that court sentenced him to 24 months imprisonment, to be served consecutively to his previous federal and state sentences. On March 23, 1999, Heath was returned to D.C. authorities to complete his D.C. sentence. On May 28, 1999, Heath was paroled from his D.C. sentence and released, allegedly in error, to the United States Marshals rather than to Virginia authorities.

On August 24, 1999 Heath was designated to the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth") based on the United States Marshals' request for designation, and the Marshals delivered him to USP Leavenworth on September 17, 1999. The BOP alleges it discovered this erroneous designation, and, on October 21, 1999, removed him from the facility and transferred him to Virginia authorities to serve his state sentence. Virginia paroled Heath on September 5, 2006, and the United States Marshals took him into custody on that date.

The BOP reviewed Heath's sentence computation, gave him credit for the time he served beginning the day after his release from D.C. authorities (May 29, 1999) through the day before he was transferred to Virginia authorities (October 20, 1999) and determined that he will complete serving both of his federal sentences with consideration for good conduct time on December 24, 2014.

2

## II.

Heath maintains that according to 18 U.S.C. §3585(a)[1], his federal sentence commenced on September 17, 1999, when the United States Marshals delivered him to USP Leavenworth to commence serving his federal sentence; that "the BOP has no authority to stop a prisoner's sentence unless it is of some cause or fault of the prisoner"; and that once a prisoner's sentence has commenced, the prisoner has a right to have it run continuously, without interruption, until expiration. This court disagrees, finding instead that the clear, unequivocal orders of all three sentencing courts directing that their sentences run consecutively to all other sentences are not trumped by the Marshals' mistake of improperly taking custody of Heath and delivering him to USP Leavenworth. Under the circumstances present here, the court agrees with the Fifth Circuit's analysis involving a prisoner in a similar case: Heath "is serving the correct total time of his *consecutive* state and federal sentences. That he will have done so in two shifts between sovereigns rather than one is of no moment." Free v. Miles, 333 F.3d 550, 555 (5th Cir. 2003). Accordingly, the court will dismiss Heath's petition.

Heath cites and relies on a line of authority that can be traced to White v. Pearlman, 42 F.2d 788 (10th Cir. 1930). In White, the prisoner was sentenced to the penitentiary for five years. The warden notified the prisoner after three years that he was being released. The prisoner told the warden that there was some mistake and that his sentence was for five years. "The warden told him that the record showed three years, and he was going to abide by the records. Accordingly the prisoner was 'dressed out,' paid up, given a discharge, and furnished with transportation. He re-established his home, and more than two years later was advised that he was wanted. He voluntarily returned to Texas, and the

---

[1] Section 3585 (a) provides:
    A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

3

authorities then committed him to [USP] Leavenworth to serve the rest of the sentence." Id. In granting relief, the Tenth Circuit noted that some of the language in the line of cases supporting "the power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement . . . taken from its setting, supports the proposition . . . that no matter what the circumstances a prisoner must serve his time, unless pardoned or legally discharged." Id. at 789. It then rejected application of the broad language of that line of authority to the facts it confronted because "opinions must be read against the background of the facts." Id. The court then concluded that the prisoner's sentence continued to run while he was "at liberty," reasoning that:

> [a] sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year; picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty.

Id.

Although some courts have applied language from the reasoning of the so-called "time at liberty" doctrine broadly, see e.g. Weekes v. Fleming, 301 F.3d 1175, 1180-82 (10th Cir. 2002), Luther v. Vanyur, 14 F.Supp.2d 773 (E.D.N.C. 1997), to circumstances in which prisoners are in the custody of another sovereign, the court agrees with the Fifth Circuit that they have "overbroadly applied" it, see Free, 333 F.3d at 554. It is moored to a core purpose which Judge Posner set forth in Dunne v. Keohane, 14 F.3d 335 (7th Cir. 1994):

> The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiration of his debt to society and his reintegration into the free community. Punishment on the installment plan is forbidden.

4

Id. at 336. Free is instructive on this point.

Free addresses the common-law rule requiring the prisoner be credited with time served when his prison sentence is interrupted through no fault of his own. In Free, federal authorities mistakenly took custody of the prisoner and he served six months of his federal sentence before they learned of the mistake and transferred him to state custody before he had completed his full federal sentence. After he completed his state sentence, authorities returned him to complete his federal sentence. However, his total time of incarceration in both federal and state prisons was not increased "by even a single day as result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence." Free, 333 F.3d at 555. In rejecting the prisoner's claim that he was entitled to credit for time served in state custody, the court stated that the "limited function" of the continuous service rule is clear: "[i]ts sole purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." Id. at 554. Because his total time of incarceration was not increased by even a single day, the court concluded that the fact that he served his state and federal sentences "in two shifts between sovereigns rather than one is of no moment." Id. at 555. In the Fifth Circuit's words, the rule against piecemeal incarcerations only "precludes the government from artificially extending the expiration date of a prison sentence." Id. It does not "justify or mandate that a prisoner receive a 'get out of jail early' card any time that such a minuet occurs, even when the prisoner is not at fault." Id.

The court finds Free's reasoning persuasive and follows it. Each court specifically ordered Heath's sentences to run consecutively and the fact that he was transferred to state custody for service of his state sentence after serving a brief period of federal time will not increase his total time of incarceration by even a single day. That he will serve his federal sentence "in two shifts between

5

sovereigns rather than one is of no moment." See id.[2]

### III.

This Court and the Northern District of Ohio specifically ordered Heath's sentences to run consecutively to all other sentences. The government's mistake in prematurely assuming custody, and then relinquishing it, does not trump those orders. Accordingly, the court will dismiss Heath's § 2241 petition.[3]

ENTER: This 24th day of August, 2009.

United States District Judge

---

[2] Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002), relied on by Heath, explains how the rule of comity applies when there are competing custody claims:

> The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant. Ponzi v. Fessenden, 258 U.S. 254, 262 (1922) . . . This rule of comity does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is true with him or until the first sovereign agrees to temporarily or permanently relinquished custody.

Weekes, 301 F.3d at 1180. He argues that Weekes shows how the "rule of comity" is applied in cases such as his. However, it is precisely that– a rule of comity–a rule which only the *sovereign* may rely on or waive. See Ponzi, 258 U.S. at 260.

[3] Although Free addresses only common law doctrine, the court finds nothing in the language of 18 U.S.C. § 3585(a) that addresses anything other than the commencement of a federal sentence, and the court has assumed that it commenced when he claims it commenced. However, nothing in § 3585(a) purports to control instances where a criminal sentence has been interrupted. See e.g. United States v. Miller, 49 F.Supp.2d 489, 495-96 (E.D. Va. 1999) (noting that in all situations other than those in which a prisoner has been mistakenly released early in the prison system and then authorities attempt to reincarcerate the prisoner, "a prisoner is not entitled to credit for the time of the interruptions.").

6